Rana Lashgari, Esq. (SBN: 262397)
rana@westcoastlitigation.com
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

Attorneys for the Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Fred Capalby<br><br>　　　　　　Plaintiff,<br>v.<br><br>Patenaude and Felix, A.P.C., John Henman, Carlos Herrero and Mr. Martinez | **Case Number: 09 CV 2289 WQH (WMc)**<br><br>**First Amended Complaint For Damages**<br><br>**Jury Trial Demanded**<br><br>**Judge: Hon. William Q. Hayes** |

## INTRODUCTION

1. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), to eliminate abusive debt collection practices by debt collectors,

to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.

3. Fred Capalby, (Plaintiff), through Plaintiff's attorneys, brings this action to challenge the actions of Patenaude and Felix, A.P.C. ("Patenaude"), John Henman ("Henman"), Carlos Herrero ("Herrero") and Mr. Martinez ("Martinez"), (hereinafter collectively referred to as "Defendants"), with regard to attempts by Defendants to unlawfully and abusively collect a debt allegedly owed by Plaintiff, and this conduct caused Plaintiff damages.

4. Defendant Henman, Defendant Herrero and Defendant Martinez were employees or agents of Defendant Patenaude, acting within the course and scope of their employment and there was a causal nexus between said Defendants' acts and said Defendants' employment. Consequently, any actions by Defendant Henman, Defendant Herrero and Defendant Martinez were the actions of Defendant Patenaude, vicariously, under the doctrine of Respondeat Superior, or other vicarious liability theories, and Defendant Patenaude is liable for those acts.

5. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiff alleges on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

7. Unless otherwise stated, Plaintiff alleges that any violations by Defendants were knowing and intentional, and that Defendants did not maintain procedures reasonably adapted to avoid any such violation.

**JURISDICTION AND VENUE**

8. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1692(k), and 28 U.S.C. § 1367 for supplemental state claims.

9. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.32 ("RFDCPA").

10. Because Defendants do business within the State of California, personal jurisdiction is established.

11. Venue is proper pursuant to 28 U.S.C. § 1391.

**PARTIES**

12. Plaintiff is a natural person who resides in the City of Claremont, County of Los Angeles, State of California.

13. Defendants are located in the City of San Diego, the County of San Diego, and the State of California.

14. Plaintiff is obligated or allegedly obligated to pay a debt, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

15. Defendants are persons who use an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, or who regularly collect or attempt to collect, directly or indirectly,

debts owed or due or asserted to be owed or due another and are therefore debt collectors as that phrase is defined by 15 U.S.C. § 1692a(6).

16. Plaintiff is a natural person from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiff, and is a "debtor" as that term is defined by California Civil Code § 1788.2(h).

17. Defendants, in the ordinary course of business, regularly, on behalf of themselves, or others, engage in debt collection as that term is defined by California Civil Code § 1788.2(b), are therefore debt collectors as that term is defined by California Civil Code § 1788.2(c).

18. This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a consumer debt and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

### FACTUAL ALLEGATIONS

19. At all times relevant to this matter, Plaintiff was an individual residing within the State of California.

20. At all times relevant, Defendants conducted business within the State of California.

21. Sometime before September 30, 2009, Plaintiff is alleged to have incurred certain financial obligations to Toyota Motor Credit Corporation for the purchase of an automobile.

22. These financial obligations were primarily for personal, family or household purposes and are therefore a "debt" as that term is defined by 15 U.S.C. §1692a(5).

23. These alleged obligations were money, property, or their equivalent, which is due or owing, or alleged to be due or owing, from a natural person to another person and are therefore a "debt" as that term is defined by California Civil

Code §1788.2(d), and a "consumer debt" as that term is defined by California Civil Code §1788.2(f).

24. Sometime thereafter, but before September 30, 2009, Plaintiff allegedly fell behind in the payments allegedly owed on the alleged debt. Plaintiff currently takes no position as to the validity of this alleged debt.

25. Subsequently, but before September 30, 2009, the alleged debt was assigned, placed, or otherwise transferred, to Defendants for collection.

26. On or about September 30, 2009, Plaintiff became aware of a levy placed on Plaintiff's bank account by Defendant Patenaude.

27. On or about September 30, 2009, Plaintiff contacted Defendant Patenaude and spoke to Defendant Martinez, a heavily accented Hispanic male. Plaintiff inquired about the levy placed on Plaintiff's account. Defendant Martinez stated that there was nothing he could do and Plaintiff would have to speak to the account manager, Defendant Henman. Plaintiff was transferred to Defendant Henman's voicemail and Plaintiff left a message asking Defendant Henman to call Plaintiff back.

28. After about an hour, Plaintiff again called Defendant Patenaude and asked to speak to Defendant Henman. Defendant Herrero spoke to Plaintiff and told Plaintiff that he was "confident" he could help Plaintiff. Defendant Herrero told Plaintiff that Defendant Herrero would lift the levy if Plaintiff would pay nine thousand dollars ($9,000.00). Plaintiff explained to Defendant Herrero that Plaintiff had recently been operated on for cancer and that Plaintiff's wife was ill and had just lost her job. Plaintiff asked Defendants to lift the levy so Plaintiff could pay rent as Plaintiff was willing to work out a payment arrangement with Defendants. Defendant Herrero stated that Plaintiff "sounded sincere" and told Plaintiff to hold at which time Defendant Herrero placed Plaintiff on speaker phone.

29. While on speaker phone, Plaintiff heard Defendant Herrero tell another employee or agent of Defendant Patenaude, "listen to this guy whining about his levy, he sounds like a queer doesn't he?" Plaintiff interrupted and said "Are you calling me names? Are you going to help me? What is going on?" Defendant Herrero, or the other agent or employee of Defendant Patenaude, responded "yeah, he is a fag. No, we are not going to help you," and hung up the phone.

30. The next day, on or about October 1, 2009, Defendant Henman left a message for Plaintiff. On the same day, Plaintiff contacted Defendant Henman asked what he could do to lift the levy. Defendant Henman lectured Plaintiff on his inability to pay his alleged debts. Plaintiff apologized and asked if there was anything he could do to lift the levy so that Plaintiff could pay his rent.

31. Defendant Henman asked Plaintiff if he wanted know the real reason why Defendant Henman obtained a levy on Plaintiff's account. Defendant Henman asked Plaintiff if he remembers speaking to Defendant Henman in July when Plaintiff had told Defendant Henman that he did not have any money and told Defendant Henman not to call him anymore. Plaintiff responded that he did recall that conversation. Defendant Henman told Plaintiff , "I took that as if you were flipping me off and there was no way I would let you get away with doing that. So I went and got the levy." Plaintiff explained that he could not have made payments in July because he had just lost his job at Washington Mutual and after a series of surgeries, his wife had lost her job as well. Defendant Henman told Plaintiff that he was not inclined to help Plaintiff. Plaintiff offered make a payment of five thousand and five hundred dollars ($5,500.00), over the course of a month, if Defendant Patenaude would release the levy on Plaintiff's bank account. Defendant Henman told Plaintiff that he would take that offer to his clients, Toyota

Motor Credit Corporation, but that they were "blood-suckers" so they probably would not accept Plaintiff's offer.

32. An hour later, Defendant Henman contacted Plaintiff and told him that Plaintiff's bank, Chase, would not allow Defendant Patenaude to remove the levy. Defendant Henman told Plaintiff that Plaintiff needed to go to his local Chase branch, speak to a Branch Manager, identify the process for getting levies removed, and obtain a fax number so that Defendant Henman could fax a release to the bank. Plaintiff immediately went to the bank and did as he was instructed.

33. Subsequently, Plaintiff contacted Defendant Henman, informed Defendant Henman that Plaintiff had made all the arrangements with his bank and gave Defendant Henman the bank's fax number. Defendant Henman responded that he did not want the fax number at that time and that he would call Plaintiff the next day.

34. The next day, on October 1, 2009, Defendant Henman contacted Plaintiff and told him that the levy would remain on Plaintiff's bank account until Plaintiff paid Toyota Motor Credit Corporation eighteen thousand dollars ($18,000). Plaintiff informed Defendant Henman that Defendant Herrero had offered to release the levy for nine thousand dollars ($9000.00). Plaintiff again asked if he could set up a payment plan with Defendant Patenaude which Defendant Henman refused to do. Plaintiff then told Defendant Henman that Plaintiff believed that Defendant Patenaude may have purchased the alleged debt from Toyota Motor Credit Corporation to which Defendant Henman responded, "are you an attorney? Do you even know what you are talking about?"

35. During this same conversation, Plaintiff told Defendant Henman that Plaintiff had consulted an attorney and Plaintiff believed that Defendant Patenaude's levy against Plaintiff was improperly obtained because Plaintiff had never been served with the underlying lawsuit that lead to the levy. Defendant

Henman called Plaintiff a "liar" and a "jerk." Defendant Henman then told Plaintiff "good luck" and hung up the phone.

36. Plaintiff immediately called Defendant Henman back and asked Defendant Henman why he was so upset that Plaintiff had contacted an attorney. Defendant Henman told Plaintiff that he was lying about contacting an attorney. Plaintiff again told Defendant Henman that he had never been served and had no idea that Defendant Patenaude had obtained a default judgment against Plaintiff until his bank account was frozen. Defendant Henman again called Plaintiff a "liar" and stated, "are you an attorney? Where did you get your degree from? ITT?" Defendant Henman told Plaintiff the judgment against him was "good until 2018" and that Defendant Henman would "chase [Plaintiff] down for the next 9 years until all of the funds had been collected." Plaintiff responded that even though he believed the judgment was improperly obtained, Plaintiff was willing to work out a payment plan if Defendant Patenaude would release the desperately needed funds in Plaintiff's bank account. To this, Defendant replied, "are you stupid? Why don't you package up those drugs you're on and mail them to me instead? You are wasting your time." At this point, Plaintiff heard another agent or employee of Defendant Patenaude tell Defendant Henman to "calm down." Plaintiff told Defendant Henman that he didn't need to yell and that he was acting like Defendant Patenaude's other employees or agents who had called Plaintiff a "fag" and a "queer." Defendant Henman again called Plaintiff a "liar" and said Plaintiff "deserved" whatever they had said.

37. At that point, Debbie Barnett, an employee or agent of Defendant Patenaude asked Defendant Henman to transfer Plaintiff to her. Plaintiff again offered to pay Defendant Patenaude a sum of money in return for removing the levy on his account. Debbie Barnett told Plaintiff that the "partners" may approve his offer if he would be willing to have his relatives sign a "promissory note."

38. On or about October 2, 2009, Debbie Barnett contacted Plaintiff and told him that the settlement was not approved by the "partners" and the levy would remain in place.

39. These communications with Plaintiff were "communications" as that term is defined by 15 U.S.C. § 1692a(2).

40. These communications were "debt collections" as Cal. Civ. Code 1788.2(b) defines that phrase.

41. Through this conduct, Defendants used obscene or profane language or language the natural consequence of which is to abuse the hearer or reader. Consequently, Defendants violated 15 U.S.C. § 1692d(2).

42. Through this conduct, Defendants engaged in conduct the natural consequence of which was to harass, oppress, or abuse a person in connection with the collection of a debt. Consequently, Defendants violated 15 U.S.C. § 1692d.

43. Through this conduct, Defendants used a false, deceptive, or misleading representation or means in connection with the collection of a debt. Consequently, Defendants violated 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10).

44. Through this conduct, Defendants used an unfair or unconscionable means to collect or attempt to collect any debt. Consequently, Defendants violated 15 U.S.C. § 1692f.

45. Through this conduct, Defendants used obscene or profane language. Consequently, Defendants violated Cal. Civ. Code § 1788.11(a).

46. Because this violated certain portions of the federal Fair Debt Collection Practices Act as these portions are incorporated by reference in the Rosenthal Fair Debt Collection Practices Act, through California Civil Code § 1788.17, this conduct or omission violated Cal. Civ. Code § 1788.17.

47. As a result of Defendants' conduct, Plaintiff, who is currently battling cancer, has suffered from sleeplessness, anxiety, changes in appetite, chest pain, fear of answering telephones, feelings of guilt and helplessness, depression, nausea, headaches and thoughts of suicide.

## COUNT I

### FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)
### 15 U.S.C. §§ 1692 ET SEQ.

48. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

49. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

50. As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every defendant, jointly and severally.

## COUNT II

### ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (RFDCPA)
### CAL. CIV. CODE §§ 1788-1788.32

51. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

52. The foregoing acts and omissions constitute numerous and multiple violations of the RFDCPA, including but not limited to each and every one of the above-cited provisions of the RFDCPA, Cal. Civ. Code §§ 1788-1788.32

53. As a result of each and every violation of the FDCPA, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00

pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from each and every defendant, jointly and severally.

## COUNT III

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

54. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

55. Defendants acted negligently.

56. Plaintiff suffered severe emotional distress.

57. The conduct of Defendants was a substantial factor in causing Plaintiff this severe emotional distress.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

58. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

59. The conduct of Defendants was outrageous.

60. Defendants intended to cause Plaintiff emotional distress or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress while knowing that Plaintiff was present when the conduct occurred.

61. Plaintiff suffered severe emotional distress.

62. The conduct of Defendants was a substantial factor in causing Plaintiff this severe emotional distress.

## COUNT V

### TORT IN SE

63. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

64. Defendants violated a statutory duty to another and, consequently, is liable under the doctrine of Tort-In-Se.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants, and Plaintiff be awarded damages from Defendants, as follows:

- An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);
- An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);
- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3);
- An award of actual damages pursuant to California Civil Code § 1788.30(a);
- An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b);
- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c).
- Punitive damages;
- Special, general, compensatory and punitive damages.

65. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Date: 12/2/2009         Hyde & Swigart

By: s/ Rana Lashgari
Rana Lashgari
Attorneys for Plaintiff